Thomas Walton *v.* R. C. Hargroves.

THOMAS WALTON *v.* R. C. HARGROVES.

1. JUDGMENT LIENS: NATURE OF. — The general lien of a judgment on lands does not, *per se,* constitute a property, or right in the thing itself; it is a mere right to levy, to the exclusion of adverse interests subsequent to the judgment.

Thomas Walton *v.* R. C. Hargroves.

2. .SAME: OPERATES UPON THE ACTUAL INTEREST OF THE DEBTOR IN THE PROPERTY TAKEN IN EXECUTION. — A judgment creditor takes in execution under his judgment the property of his debtor, subject to every liability under which the debtor himself held it at the time of the rendition of the judgment, and subject to all equities which exist at the time in favor of third persons.

3. VENDOR AND VENDEE: VENDOR'S LIEN: UNTIL PURCHASE-MONEY PAID VENDEE, TRUSTEE FOR VENDOR. — In equity, the vendee is not the owner adversely to the lien of the vendor, but is treated as a trustee for him until the payment of the purchase-money.

4. VENDOR'S LIEN: AGAINST WHOM WILL IT PREVAIL? — The vendor's lien will prevail against the vendee, volunteers, purchasers with notice, or having an equitable title only; assignees claiming by general assignment under bankrupt or insolvent laws, assignees claiming by general assignment made by a failing creditor, the claim of dower by the wife of the purchaser and against a judgment creditor of the vendee.

5. SAME: EXISTS, THOUGH DEED, RECITES PURCHASE-MONEY PAID, AGAINST ALL PERSONS EXCEPT BONA-FIDE PURCHASERS AND CREDITORS HOLDING UNDER MORTGAGES OR DEEDS OF TRUST. — The vendor of land who has taken no security for the purchase-money, although he has made an absolute conveyance by deed, which recites that the consideration has been paid, retains an equitable lien for the purchase-money, unless expressly or impliedly waived; and this lien will be enforced in equity against all persons, except creditors, without notice, holding under *bonâ-fide* mortgages or deeds of trust, and *bonâ-fide* purchasers for a valuable consideration, without notice, before the payment of the purchase-money.

6. SAME: WILL BE ENFORCED AGAINST PURCHASERS AND MORTGAGEES OF AN EQUITABLE ESTATE. — The vendor's lien will be enforced against a subsequent purchaser or mortgagee without notice, of an equitable estate, and on the principle, that the vendor and purchaser or mortgagee both have an equity, and *qui prior est in tempore, potior est in jure.*

APPEAL from the Chancery Court of Sunflower county, Hon. William Cothran, chancellor.

Appellee, on the 20th day of January, 1860, sold to one G. B. Davis certain lots of land in the town of McNutt, and took his promissory notes to secure the purchase-money, and executed and delivered a deed of conveyance with covenants of general warranty, which recites that the purchase-money was paid. The deed from appellee to Davis was duly recorded in the Probate Clerk's office of Sunflower county.

On the 8th of June, 1860, Henderson and Peal recovered a

judgment in the Circuit Court of Sunflower county, against G. B. Davis, for the sum of twenty-four hundred dollars. In April, 1866, this judgment was transferred to appellant, who purchased the same for a valuable consideration. G. B. Davis having died in 1860, appellant, in 1866, had the judgment revived against Eli Waites, his administrator, and one Lucas, who was in possession of the land sold by appellee to Davis.

It was agreed, that at the time of the rendition of the judgment in favor of Henderson and Peal, they did not know of the lien of appellee on the lots of land in the town of McNutt, sold to Davis, but that appellant, at the time of the transfer of the judgment, knew that the purchase-money was unpaid.

Appellant, in 1867, had an execution issued on the judgment transferred to him by Henderson and Peal, and had the same levied on the land sold by appellee to G. B. Davis. Appellee filed his bill against appellant and the administrator and heirs of G. B. Davis, to enforce his vendor's lien, and to restrain appellant from selling the land under his judgment. On final hearing, the court decreed, that the land be sold and the proceeds be applied, first to the payment of the notes held by appellee, and the balance over to. appellant, and that he be perpetually restrained from selling the land under his judgment. From this decree an appeal is taken by appellant Walton to this court.

The errors assigned are: 1. The court below erred in making the injunction obtained by Hargroves against Walton perpetual and absolute. 2. In decreeing that Hargroves was entitled to priority of payment out of the property in controversy in preference to Walton. 3. In decreeing against Walton and in favor of Hargroves, that the sale at law should be stopped, and that the land should be sold under a decree of the Court of Chancery.

*Thomas Walton*, in *propriâ personâ*, argued: —

*Holloway* v. *Ellis*, 3 Cush. 103, supports a vendor's lien against a purchaser at a sale under execution, who alleged that he had no notice of the lien; and the judge who pronounced

Thomas Walton *v.* R. C. Hargroves.

the opinion referred to *Dunlap* v. *Burnett*, 5 S. & M., in support of it. The facts, when the reporter's statement is examined, of the former case, do not justify so great an extension of the rights of a vendor; which show that the purchaser bought with notice of the lien. It was only a decision against a purchaser with notice, and not against a judgment creditor without notice. Spencer, C.J., 18 Johns. 419; Lord Mansfield, in *Saunderson* v. *Roules*, 4 Bur.; 2 Pow. on Dev. (by Jarman), 200; 2 Kent's Com. 335. The opinion in *Holloway* v. *Ellis* is not supported by *Dunlap* v. *Burnett;* which is cited as authority; but, on the contrary, the opinion therein pronounced is precisely opposite to that in *Holloway* v. *Ellis.* When equities are equal, the law will prevail, is the ground evidently proceeded upon in *Dunlap* v. *Burnett.* 1 Story's Eq. Ju. § 64 *c.*

In *Henderson* v. *Downing*, 2 Cush. 96, 115, "the judgment creditor had a right to enforce his judgment by a sale of the land, although notice of the existence of the deed of trust may have been given to him subsequent to the rendition of the judgment." *Holloway* v. *Ellis* is overruled by the later case of *Harper* v. *Tapley*, 6 Geo. 506, 510, in which *Henderson* v. *Downing*, 2 Cush. 106, is cited as authority; but *Holloway* v. *Ellis* is not referred to, evidently because it was not supposed to conflict.

It is manifest, from the language employed in *Dunlap* v. *Burnett*, that no peculiar superiority over subsequent equities is meant to be attributed to vendors' liens; and "a declaration in favor of a lien, in case where the decree was against that lien, is not entitled to the same respect which the same declaration would claim had the decree been in favor of the lien." *Greenleaf* v. *Bayley*, 7 Wheat. 46.

Judgments were sustained against secret equities in cases of *Pickett* v. *Banks*, 11 S. & M. 445; *Henderson* v. *Downing*, 2 Cush.; and *Harper* v. *Tapley*, 6 Geo. In *Andrews* v. *Wilkes*, 6 How. 563, " the lien of a judgment stands, if possible, on higher grounds than a mortgage, as it accrued by the solemn judgment of a court of competent jurisdiction: there can be no difference in principle between a judgment and a mortgage." .

The same doctrine has been declared in other States. *Beebe* v. *The Bank of New York*, 1 Johns. 529. If a tenant in common fail to record his deed of separation, a judgment against his co-tenant has priority over his separate rights, and a judgment creditor stands upon the same footing as a purchaser. *Manly* v. *Pettee* (reported in the Am. Law Reg. for June, 1866, p. 486). The same point is decided, in favor of judgments against prior equities, in *Bingamin* v. *Hyatt*, 1 S. & M. Ch. Rep. 437.

There is no difference between vendors' liens and other equities. *Briggs* v. *Hill*, 6 How. 364. *Vide* also Co. Lit., Hargrave and Buttler's notes (as appears from 7 Wheat. 46); the case of *Stanhope* v. *Earl Verney; Fawel* v. *Heelis*, Ambler, 724 (likewise discussed in 7 Wheat. 46).

These cases show conclusively that judgments may be good against equities in general, and that a vendor's lien is not superior to other equities or assignments that are not connected with a transfer of property Kent's Com., vol. iv. p. 152; *Gann* v. *Chester*, 2 Yer. Tenn. Rep.; *Baine* v. *Williams*, 1 S. & M. 113. It is decided that all other assets be marshalled first; if none, then the land liable to the lien might be subjected to the judgment.

In the case at bar, there is no property liable to the execution of the judgment; and the judgment creditor cannot garnishee. Rev. Code, 537, art. 313; *Jeffries* v. *Harvie*, 9 Geo. 97.

The vendor can protect himself by taking a mortgage on the land sold (Rev. Code, 308, art. 13); and vendors then must seek protection within the statute: *Expressio unius est exclusio alterius.* "When an act requires a thing to be done in a particular way, that way alone can be pursued." 3 Brevard, 396; 15 Mass. 205; 9 Pick. 496; 13 ib. 284; 3 Stew. & Port. 13.

When no mortgage is taken, a court of equity cannot create and enforce one for unpaid purchase-money. *Gann* v. *Chester*, 2 Yer. 208. A mortgage is superior to a vendor's lien. 5 Cush. 779; *Littlejohn* v. *Gordon*, 3 Geo. 237.

A vendor relying on the lien should reduce it to a mortgage,

and thereby give notice of it to the world.   7 Wheat. 46, *Bayley* v. *Greenleaf.*

Great caution has been felt in raising such a trust, in view of the Statute of Frauds.   *Briggs* v. *Hill*, 6 How. 362; *Skaggs* v. *Neilson*, 3 Cush. 88.

In *Baine* v. *Williams* it is even said that the lien subsists, notwithstanding the vendor may have taken a mortgage.

So our statute law, *vide. supra*, must be complied with by vendors, " *Ut res magis valeat, quam pereat.*"

A judgment creditor has the preference over a vendor's lien (*Greenleaf* v. *Bayley*, 7 W. 46); and if in the nature of a trust, it is a secret trust, preferable to others subsequent, unconnected with a legal advantage; for when equities are equal, that having the legal advantage shall prevail.   Ib., Hargrave and Buttler's notes; Co. Lit. 290 *b*, *Stanhope* v. *Earl Verney.*

The *dictum*, in *Dunlap* v. *Burnett*, that there must be "a transfer of the property itself" to defeat a vendor's lien, if law, could be met in the case at bar.

A *fi. fa.* has been issued on the judgment, and levied on the property in dispute, which completely devests it out of the judgment debtor.   "If his property has been seized under a *fi. fa.*, the property has been devested out of the debtor." *Thelluson* v. *Smith*, 2 Wheat. 426; *Conard* v. *Atlantic Ins. Co.* 1 Pet. 386.

*Baines* v. *Williams*, 10 S. & M., upholds the lien of a judgment against a vendor's claim, although the property was bought by the judgment debtor after the judgment was rendered.   4 Kent's Com. 153, note; Frem. Ch. Rep. 298; *Walker* v. *Gilbert*, ib. 98; *Pickett* v. *Banks*, 11 S. & M. 445.   All these cases show that a creditor deals on the faith of the particular property in his debtor's hands, and must be sustained therein.

A vendor's lien does not prevail against creditors who parted with no new consideration to obtain their lien.   *Stewart* v. *Ives*, 1 S. & M. 197.

In the case at bar, there was a new credit given and a new consideration parted with: The notes, on which was due, the 1st of June, 1860, $2,400, were parted with at a later day, when,

of course, more was due, by sacrificing a part that was due, and taking a confession of judgment, which was a lien on the property in question for the balance; and so the judgment was not on the notes. Interest was also sacrificed on them to obtain the judgment; and a stay of execution likewise granted; all of which plainly raise a new consideration; and, of course, the judgment creditors are thereby to be considered as new incumbrancers, whose claim arises upon a new consideration, if it be thought requisite; though the authorities previously cited show a new consideration to be unnecessary.

But if the authorities, as above explained, did not support a judgment without notice against a vendor's lien, the Court of Chancery would, at best, not interfere against the judgment; for, *In æquali jure melior est conditio defendentis.*

In *Boon* v. *Chiles,* 10 Pct. 211, "Equity will not aid his (the innocent incumbrancer's) adversary in taking from him *tabula in naufragio*" *Vide* also Eq. Plea. § 805. If complainant in case at bar is innocent, still chancery cannot interfere in his behalf against a judgment creditor equally innocent. The court would leave the law to have its course, and the parties to their legal rights; and respondent only asks that he be not enjoined from pursuing his legal rights.

But is complainant innocent? Of course not, when the record shows that he gave the judgment debtor a deed reciting that the purchase-money had been received by him, thus enabling him to obtain credit upon the faith of the property conveyed. It is against equity, and unconscionable, that he should now deny his own statements and solemn avowals, to the manifest detriment of others innocent. "*Alligatio contra factum est admittenda.*" Brown's Max. 161.

Judgment confessed is an equitable mortgage, and of a higher consideration than a judgment *in invitum;* and it seems against this last kind only has a vendor's lien ever been held good, if secret. Sto. Eq. Plea. § 807 *a.* "A purchaser with notice from a purchaser without notice, may shelter himself under the first purchaser." Ib. § 808.

"An assignee is clothed with the rights of his principal."

Brown's Max. 415; *Henderson* v. *Downing*, 2 Cush. After judgment on *sci. fa.*, the party is concluded from setting up "even the most pressing equities" in his favor. *Jackson* v. *Robbins*, 16 Johns. 537.

In the case at bar, judgment was rendered on a *sci. fa.*, and this prevents complainant from pressing any equities he may have.

A debt of $2,400 is enjoined, and is now, with interest, over $3,000, and the bond should have been in a penalty of $6,000 or over. Rev. Code. 550, art. 65. It is, in point of fact, for a penalty of over $3,000.

For these and other reasons, the whole proceeding and injunction ought to be dismissed *instanter*.

*J. Z. George* and *H. L. Smith*, for appellee.
No brief on file.

Peyton, J., delivered the opinion of the court.

It appears from the record in this case, that the appellee, on the 20th day of January, 1860, sold and conveyed by deed lots 10, 11, 12, 15, and 16, of land, in the town of McNutt, in the county of Sunflower, in this State, to one Green B. Davis, and took his promissory notes of that date to secure the payment of the purchase-money, which, it is admitted, remains unpaid; that said Davis, at the time of the purchase of said lots or parcels of land, was indebted to Thomas Henderson and Peal in a certain sum of money, for which he confessed a judgment in the Circuit Court of said county, on the 8th day of June, 1860, and that said judgment was afterwards assigned by said Henderson and Peal to the appellant, who was proceeding to sell said lots under an execution emanating from said judgment, when he was restrained from so doing by injunction obtained by the appellee, who filed his bill in the Chancery Court of said county, to enforce his vendor's lien upon said lots, and to subject the same to the payment of the purchase-money. And that, upon the final hearing, the chancellor perpetuated the injunction, declared the vendor's lien to

exist, and decreed that said lots or parcels of land be sold for the payment of the unpaid purchase-money. From which decree the cause comes here by appeal.

The only question presented by this record for our decision is, which lien shall prevail, — that of the vendor, or that of the judgment creditor.

The general lien of a judgment on lands does not, *per se*, constitute a property or right in the land itself. It only confers a right to levy on the same, to the exclusion of other adverse interests, *subsequent* to the judgment; and, when the levy is actually made on the same, the title of the creditor relates back to the time of the judgment, so as to cut out intermediate incumbrances. *Conard* v. *The Atlantic Insurance Company*, 1 Peters, 443. The judgment creditor takes in execution, under his judgment, all that belongs to his debtor and nothing more. He stands in the place of his debtor, when he purchases under his judgment. He takes the property of his debtor, subject to every liability under which the debtor himself held it. The general lien of a judgment on property is subject to all the equities which exist at the time in favor of third persons, and a court of equity will limit such lien to the actual interest of the judgment debtor in the property. *Keirstead* v. *Avery*, 4 Paige, 15, S. & M. Ch. Rep. 344, Freeman's Ch. Rep. 96.

The vendor's lien is founded in natural justice, and the presumed intent of the parties to the contract. Both forbid that the vendee shall enjoy the property without payment of the consideration. In equity, the vendee is not the owner adversely to the lien of the vendor, but is treated as a trustee for him until payment of the purchase-money. This lien exists against the vendee, and against volunteers and purchasers under him, with notice, or having an equitable title only. And it will also prevail against assignees claiming by general assignment under bankrupt or insolvent laws, and against assignees claiming under a general assigment made by a failing debtor for the benefit of creditors; for in such cases the assignees are deemed to possess the property subject to all the

equities to which it was liable in the hands of the debtor. So it will prevail against the claim of dower by the wife of the purchaser, and against a judgment creditor of the vendee; for each party, as a creditor, would have a lien on the estate sold with an equal equity, and, in that case, the maxim applies, *qui prior est in tempore, potior est in jure.*   2 Story's Equity, 596, § 1228; *Jenkins* v. *Bodley,* S. & M. Ch. Rep. 338.

The vendor of land who has taken no security, although he has made an absolute conveyance by deed, with a formal acknowledgment, in the deed, or on the back of it, that the consideration has been paid, retains an equitable lien for the purchase-money, unless there has been an express or implied waiver and discharge of it; and this lien will be enforced in equity against all persons except creditors holding under a *bonâ-fide* mortgage or deed of trust, and *bonâ-fide* purchasers for valuable consideration without notice.   *Gilman* v. *Brown,* 1 Mason, 213; *Tompkins* v. *Mitchell,* 2 Rand. 428; *Ross* v. *Whitson,* 6 Yer. 50; *Dunlap* v. *Burnett,* 5 S. & M. 710; *Holloway* v. *Ellis,* 25 Miss. 103; *Patterson* v. *Johnson,* 7 Ohio, 226.

Purchasers and mortgagees of an *equitable* estate take the same subject to the vendor's equity; and purchasers and mortgagees of the *legal* estate, with notice of the lien before paying the purchase-money, will be postponed to the vendor's equity. For, in both these cases, the purchasers and mortgagees have no greater equity than the vendor.   In the first case, they have but an equity, and, as between equal equities, the maxim applies, *qui prior est in tempore, potior est in jure.*   And, in the other case, the legal estate is not allowed to prevail, in consequence of the purchaser's equity having been destroyed by the *notice* which he had when he paid the consideration.   Roberts on Principles of Equity, 94.

Upon the whole, we think there is no error in the decree of the court below.

The decree must, therefore, be affirmed.